ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 26 2005
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| JOANN MCCOY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. |
| | )  3:03-CV-1346-N |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court, this case has been referred to the United States Magistrate Judge. The Brief of JoAnn McCoy ("Plaintiff" or "McCoy"), the Brief of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), and Plaintiff's Reply Brief are before the Court for consideration. The Court has reviewed the evidence of the parties in connection with the pleadings and **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**I.   Background**[1]

**A.   Procedural History**

This is a social security case. McCoy seeks judicial review of a final decision by the Commissioner, who denied her claims for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. McCoy filed her applications in July 2000, alleging disability since October, 1997, due to back, neck and hand problems. (Tr. at 126-28, 130, 402-04.) She also reported suffering from mental limitations

---

[1] The following procedural history comes from the transcript of the administrative proceedings. The transcript is designated as "Tr."

and claimed she could not perform the demands of work. (*Id.* at 110, 163-66.) Her application was denied both initially and upon reconsideration. (*Id.* at 103-08, 110-15.) Plaintiff, who was represented by counsel, received a hearing before an Administrative Law Judge ("ALJ"), Truett M. Honeycutt, on March 15, 2002. (*Id.* at 46–97.) At Plaintiff's request, the ALJ reopened two earlier applications from 1998 and 1999. (*Id.* at 21-2, 32.) The ALJ issued an unfavorable decision on May 31, 2002. (*Id.* at 13-20.) The Appeals Council declined McCoy's request for review of the ALJ's decision on May 9, 2003, rendering that decision the final decision of the Commissioner. (*Id.* at 4-6.) McCoy now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

McCoy alleges that (1) the ALJ erred by finding that her mental impairment was not severe; (2) she is presumptively disabled because she meets Listing 12.04;[2] and (3) the ALJ was required

---

[2] In order to meet the applicable level of severity for the listing at § 12.04 in Appendix 1, a claimant must meet the requirements in both subsections A and B, which are:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

   a. Anahedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight; or
   c. Sleep disturbance; or
   d. Psychomotor agitation or retardation; or
   e. Decreased energy; or
   f. Feelings of guilt or worthlessness; or
   g. Difficulty concentrating or thinking; or
   h. Thoughts of suicide; or
   i. Hallucinations, dilusions or paranoid thinking;

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2

to call a Medical Expert ("ME") to testify at her hearing. (Pl.'s Br. at 1, 5-9.) The Commissioner states that the record did not establish a severe mental impairment or one that meets or equals a listing. Further, according to the Commissioner, the testimony of an ME was not required. (Def.'s Br. at 4-7.)

### B.   Factual History

#### 1.   Plaintiff's Age, Education, and Work Experience

McCoy's date of birth is October 1, 1951. (Tr. at 14, 126.) She was forty-eight years old at the time of her alleged disability, and was fifty years old when her Title II eligibility expired on December 31, 2001, her date last insured.[3] (*Id.*) Plaintiff has a high school education, some college courses, and past work experience as a grocery store cashier and telemarketer. (*Id.* at 56-72, 136, 143.)

---

> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which caused the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.04.

---

[3] Plaintiff was required to show she was under a continuing disability before her date last insured for purposes of Title II benefits. To be eligible for supplemental security income benefits under Title XVI of the act, a claimant must show she was under a continuing disability while her application was pending. *See* 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.330, 416.335. If there is a hearing decision, the application remains in effect until the hearing decision is issued. 20 C.F.R. § 416.330. If a claimant first meets all of the requirements for eligibility after the period for which her application was in effect, she must file a new application for benefits. 20 C.F.R. § 416330(b).

The Court will now discuss the medical evidence that is relevant to McCoy's contentions.

## 2. Plaintiff's Medical Evidence

On October 10, 1997, an MRI of the cervical spine showed that McCoy had a prominent herniation at C6-7 with a probable associated spur formation and moderate compression of the cord and the thecal sac. (Tr. at 194.) Two weeks later, surgeons at Medical City Dallas Hospital performed an operation on her cervical spine, consisting of anterior cervical carpectomy, C6, arthrodesis, C5-C7 (C5-6 & C6-7), anterior cervical plating, C5-C7 (orion plate), and placement of Gardner-Wells skull tongs. (*Id.* at 174-75.)

In December 1997, Dr. David E. Ostrow, her surgeon, examined her and found that she was improved and should be able to return to work in approximately six weeks. (*Id.* at 228.) On December 18, 1997, he did a follow-up examination and found that her gait was markedly improved and most of the numbness in her legs had cleared. She complained of low back pain and a rapid heartbeat, with a funny sensation in her chest. (*Id.* at 227.) Dr. Ostrow suggested that she contact her family physician regarding her chest symptoms. (*Id.*)

About six weeks later, on January 28, 1998, she returned to the Medical City Dallas Hospital emergency room, complaining of atypical chest pain. (*Id.* at 197.) A stress test was interpreted as negative but considered suspicious in terms of history. *(Id.* at 226.)

In March of 2001, Plaintiff's progress notes from Garland Health Center showed she had a stress test that was suggestive of, but not diagnostic of, ischemia. (*Id.* at 364.) She was referred to cardiology. (*Id.*) In November 2001, she reported chest pain that was not related to exercise. (*Id.* at 351.) She told the doctor that she wanted a written statement saying that she was completely disabled. (*Id.* at 353.) The doctor informed her that she could not provide such a statement because

4

it would not be accurate. (*Id.*) She was referred again to a cardiology for a stress perfusion study. (*Id.* at 351.)

Two state medical consultants independently reviewed the medical evidence. One of the consultants found no limitations. (*Id.* at 313-20.) The other found that McCoy could stand or walk about six hours in an eight-hour workday. (*Id.* at 329.) He also found that Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently. (Id.) Each of the agency consultants found that Plaintiff had an unlimited ability to push or pull, up to the previously stated weight limits. (*Id.*) The consultants found no postural, manipulative, visual, communicative, or environmental limitations were found. (*Id.* at 330-33.) Both consultants found that Plaintiff's alleged limitations from symptoms were not fully supported by the medical and other evidence. (*Id.* at 320, 333.)

With respect to Plaintiff's mental condition, the only medical record from a treating physician came from her doctor at the Garland Health Clinic. (*Id.* at 249.) In January of 1999, Plaintiff reported having an occasional depressed mood, but her doctor did not treat her for depression or refer her to a specialist. (*Id.*)

On February 26, 2001, the consultative medical examiner, Ganerosa Guintu, M.D., found that Plaintiff did not meet the full criteria for a specific depressive disorder and that her depression was linked to her chronic pain. (*Id.* at 321-27.) He assessed her Global Functioning Assessment ("GAF") at 55 to 60,[4] and her prognosis as "fair to poor," depending on whether she was treated for her depression. (*Id.*)

---

[4] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." DSM-IV-TR at 34. A GAF of 51 to 60 indicates: "**Moderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." *Id.*

5

On April 5, 2001, a state agency medical consultant, Dr. Robert M. Gilliland, found from the medical evidence that Plaintiff's mental impairment was not severe and did not satisfy the diagnostic criteria for Listing 12.04. (*Id.* at 336, 339.) This was all the medical evidence regarding Plaintiff's mental health that was before the ALJ when he rendered a decision on May 31, 2002. (*Id.* at 13-20.)

Plaintiff submitted new evidence regarding her mental condition to the Appeals Council. (*Id.* at 407.) The Appeals counsel certified the March 10, 2003 psychological evaluation by Dr. George Mount as part of the record on July 17, 2003. (Certification in Supplemental Transcript.) One year and two months after her date last insured and ten months after the ALJ's decision, Dr. Mount diagnosed Plaintiff with mood disorder due to neck surgery with major-depressive type features and somatoform pain disorder. (*Id.* at 424.) He found that Plaintiff's Intelligence Quotient ("I.Q.") was borderline and her Global Assessment of Functioning ("GAF") was 51, indicating moderate difficulty in social, occupational, or school functioning.[5] He concluded that Plaintiff's impairments equaled Listings 12.04 and 12.07. (*Id.* at 429-44.) Dr. Mount indicated that Plaintiff's ability to adjust to a job was poor in most categories and that she had no ability to deal with work stress. (*Id.*) Her prognosis was guarded. (*Id.* at 424.)

The Court will now recount the hearing testimony that bears on McCoy's contentions.

### 3.   **Plaintiff's Hearing**

McCoy's hearing took place on March 15, 2002. (*Id.* at 52.) As the Court noted previously, she was represented by counsel at the hearing. (*Id.*) First, McCoy testified that her last job was as a cashier at a Minyard's grocery store. (*Id.* at 56.) She worked there for two months. (*Id.*) She

---

[5] Dr. Guintu placed Plaintiff in the same range, 51-60, but at the time of his evaluation, he placed her higher in the range, i.e., 55-60.

stated that she quit because she had trouble standing for a long time and lifting the groceries. (*Id.* at 57.) She further explained that she had previously worked for a Tom Thumb store. (*Id.*) She testified she had past experience as a telemarketer operator, answering incoming calls, and as a telemarketing supervisor. (*Id.* at 62-6.) She said that she tried to return to the operator job but could not pass a typing test. (*Id.* at 67.) She testified that her primary problems are cervical neck problems, anemia, high blood pressure, and lower back pain. (*Id.* at 67-8.) She testified that she can lift a gallon of milk from the floor to the table and carry a gallon of milk ten feet. (*Id.* at 75.) She said that she can alternate walking, sitting, and standing; that she sometimes lies down during the day; and that on bad days, she avoids walking. (*Id.* at 76-7.) She stated that she does her own laundry and washes the dishes. (*Id.* at 78-9.) She said that she would be able to go grocery shopping by herself, but that her aunt chooses to do the shopping. (*Id.*) She testified that she visits with friends, but that she has not driven a car for years. (*Id.* at 80.) She said that she can walk only a block without shortness of breath. (*Id.* at 83.) She related that she takes care of her own personal care and dressing. (*Id.* at 54.) She said that she spends most of her time watching television and some of her time doing household chores. (*Id.* at 68.)

McCoy testified that her pain is controlled with Ibuprofen. (*Id.* at 65.) Although she takes iron for anemia, she said that the anemia does not prevent her from working. (*Id.* at 67.) She said that no doctor had ever prescribed medication for depression, that she had never been hospitalized in a mental hospital, and that she had never been treated by a psychiatrist or psychologist. (*Id.*) She stated that she did not think that she had a mental illness that would prevent her from working, and that the reason that she is not working is related to her physical problems. (*Id.*)

7

**4.     The ALJ's Findings**

On May 31, 2002, the ALJ issued an unfavorable decision on McCoy's applications for Disability Insurance Benefits and Supplemental Security Income Disability Benefits. (*Id.* at 13-20.) In relevant part, the ALJ found that McCoy has severe impairments of cervical disk disease, high blood pressure and anemia. (*Id.* at 15.) He further found that Plaintiff's's impairments did not meet or equal the criteria of any of the listed impairments described in 20 C.F.R. Pt. 404, Supt. P., App. 1 (the "Listings"). (*Id.*) He found that McCoy had the residual functional capacity to perform light work activity and could perform her past relevant work as a cashier and telemarketer. (*Id.* at 16.) In reaching this conclusion, the ALJ considered whether Plaintiff's pain was disabling. (*Id.* at 17.) He found that the medical evidence did not entirely substantiate the intensity and persistence of pain that McCoy alleged, nor did it support her version of the effect the impairments had on her ability to work. (*Id.*) He found her testimony with respect to the subjective complaints and functional limitations neither entirely credible nor consistent with the evidence. (*Id.*)

The ALJ also considered whether a mental impairment had affected Plaintiff's residual functional capacity. (*Id.*) He considered the consultant examiner's report that Plaintiff's mental condition does not meet the full criteria for a specific depressive disorder. (*Id.*) He considered the facts that (1) Plaintiff had received no treatment or medication for depression and (2) no evidence showed that her depression had more than a mild impact on any area of functioning. (*Id.*) He noted that she performed many daily activities, interacted with others, and focused sufficiently to complete many daily tasks. (*Id.*) He also recalled that there was no evidence of decompensation. (*Id.*)

"[A]n impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on an individual that it would not be expected to interfere with the individual's

8

ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ considered Plaintiff's mental impairment under the *Stone* standard and found that Plaintiff's mental condition was not severe. (*Tr.* at 17.)

The Court now turns to the legal standards that will guide its analysis.

## II. Legal Standards

To be entitled to social security benefits, McCoy must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry in determining disability:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

9

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). In this case the ALJ's determination ended at the fourth step.

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to (1) whether the decision to deny benefits was supported by substantial evidence and (2) whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (West Supp. 1999). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. The Court now turns to the merits of the appeal.

### III.   Analysis

Plaintiff contends the ALJ erred by finding (1) that her mental impairment was not severe and (2) that her mental impairment did not meet or equal a listing.  She also contends the ALJ erred by failing to appoint a medical expert to testify at the hearing.  Plaintiff submitted Dr. Moody's post-hearing psychological evaluation to the Appeals Council to support her request for a review of the ALJ's decision on the merits.  The Appeals Council considered the report, as it must under 20 C.F.R. § 404.970(b), but found no reason to review the ALJ's decision and denied Plaintiff's request for review.  (Tr. at 4.)

If new and material evidence is submitted to the Appeals Council, it will consider the additional evidence, but *only if it relates to the period on or before the date of the administrative law judge hearing decision.  See* 20 C.F.R. § 404.970 (b).  The Fifth Circuit Court of Appeals has noted:

> [An appellate court] cannot, of course, determine whether [claimant] became disabled at any date subsequent to [claimant's] original hearing.  [I]t would be inconsistent with [the] principles of appellate review to remand the case solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition.

*Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

In this case, Plaintiff submitted a psychological evaluation conducted on March 10, 2003, one year and two months after Plaintiff's date last insured and almost ten months after the ALJ's decision.  (*Tr.* at 424.)  Plaintiff has not met her burden to prove that the new evidence relates to the period on or before the date of the ALJ's decision.  Plaintiff makes the conclusory allegation that a fact question exists with respect to whether the evidence submitted at the Appeals Council level represents a degeneration of the earlier condition or a more detailed picture of a previously

11

existing condition. No evidence supports her supposition that it is a more detailed picture of her condition at the time of the ALJ's decision. Dr. Mount's report contains no indication that it is anything other than an evaluation of Plaintiff's mental condition on March 10, 2003, ten months after the decision. The Commissioner did not err by declining McCoy's request for review.

The Court will now consider whether the ALJ erred in the ways McCoy claims and whether McCoy was prejudiced by such errors, if any.

### A. The ALJ's Decision that McCoy's Depressive Disorder was Not a Severe Impairment

A finding of no substantial evidence is appropriate only when there is no medical evidence in the record to support the Commissioner's decision or no credible evidentiary choices. *Johnson v. Bowen,* 864 F.2d 340, 343-44 (5th Cir. 1988). As noted previously, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone,* 752 F.2d at 1101. (5th Cir. 1985). The ALJ correctly identified this legal standard when he considered Plaintiff's allegations of a severe mental impairment. (Tr. at 17.) The ALJ sent Plaintiff to a consultative medical examiner, Ganerosa Guintu, M.D., who found on February 26, 2001, that Plaintiff did not meet the full criteria for a specific depressive disorder and that her depression was linked to her chronic pain. (*Id.* at 321-27.) He assessed her GAF at 55 to 60, moderate, and her prognosis as "fair to poor," depending on whether she was treated for her depression. (*Id.*)

On April 5, 2001, a state agency medical consultant, Dr. Robert M. Gilliland, found from the medical evidence that Plaintiff's mental impairment was not severe and did not satisfy the

diagnostic criteria for Listing 12.04. (*Id.* at 336, 339.) He further concluded with respect to the Criteria "B" Functional Limitations that Plaintiff had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (*Id.* at 346.) He found no episodes of decompensation. (*Id.*) The agency medical consultant found that Plaintiff's alleged limitations from symptoms were not fully supported by medical or other evidence. (*Id.* at 48.)

It was uncontroverted that Plaintiff never had received treatment for depression and that she never had attempted to control depression with medication.[6] The ALJ did not fully credit Plaintiff's contention that her mental problems impaired her ability to concentrate, make decisions, and complete tasks in a timely manner, finding that Plaintiff could focus sufficiently to complete many daily tasks and that her subjective complaints were exaggerated and not entirely credible to the extent contended.

This Court is not free to reweigh the evidence, retry the issues, or substitute its own judgment for that of the ALJ. *Greenspan*, 38 F.3d at 236. After reviewing the record to determine whether substantial evidence is present, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff's mental illness was not severe.

### B. Whether McCoy Met Listing 12.04 and Was Presumptively Disabled As a Matter of Law

Plaintiff's claim that she met listing 12.04 is premised upon the proposition that the evidence submitted to the Appeals Council related to the period of time before her date last insured of December 31, 2001 for Title II purposes and for before the date of the ALJ's decision

---

[6] Even in the evidence sent to the Appeals Council, there is no indication that Plaintiff ever sought treatment for depression or that any doctor prescribed medication to treat depression.

13

for Title XVI purposes. Dr. Mount's report provides no evidence from which such an inference may be made. Plaintiff claims that Dr. Guintu's earlier evaluation contained findings similar to those contained in the report by Dr. Mount which was submitted to the Appeals Council. However, Dr. Guintu diagnosed Plaintiff with depressive disorder not otherwise specified and found that she did not "meet the full criteria for specific depressive disorder." (*Id.* at 324.) He noted that "the symptoms [were] fewer than those required for major depressive disorder and the duration of one year [did] not meet the criteria for duration in dysthymic disorder." (*Id.*) Dr. Guintu did not indicate that psychological testing was required. The sole treating-physician record regarding depression showed that in January of 1999, Plaintiff reported having an occasional depressed mood to her doctor at the Garland Health Center. (*Id.* at 249.) Plaintiff testified at the hearing that she took no medication for depression, that she had never been hospitalized in a mental hospital, that she had never remained over night in a psychiatric wing of a hospital, that she had never been treated by a psychologist or psychiatrist, and that she did not think she had a mental illness which would prevent her from working. (*Id.* at 87.) Substantial evidence supports the ALJ's decision that Plaintiff did not meet a listing and was not presumptively disabled before the date last insured of December 31, 2001 or at the time of the ALJ's May 31, 2002 decision.

**C.   Whether a Medical Expert was Required**

An ALJ is not required to call a medical expert to testify at a hearing. *See* 20 C.F.R. § 404.1527(f)(2)(iii) ("Administrative law judges may also ask for and consider opinions from medical experts.") In this case there is nothing to indicate the ALJ erred by failing to call a medical expert to testify.

14

## IV.   Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Signed, April 26, 2005.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc*)*.

PAUL D. STICKNEY  
UNITED STATES MAGISTRATE JUDGE